IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| Irma Perez | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | |
| The Hartford, | § | |
| A.K.A. D.B.A. The Hartford Financial | § | |
| Services Group, Inc.; | § | |
| AETNA LIFE INSURANCE | § | |

**<u>PLAINTIFF'S COMPLAINT</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

1. The Plaintiff, and the person insured is Irma Perez, a resident of the Southern District of Texas and she files this Complaint, and asserts that she was wrongfully denied long term disability by the Defendant The Hartford, also known and doing business as The Hartford Financial Services on November 17, 2021.

2. The Hartford, AKA and DBA as The Hartford Financial Services Group Inc, may be served at The Hartford Financial Services Group, Inc.; 690 Asylum Avenue; Hartford, CT 06155;p .

3. The underwriting Company and author of the benefit plan at issue in this lawsuit is AETNA LIFE INSURANCE COMPANY. Aetna may be served at Aetna's Home Office at Aetna Life Insurance Company; 151 Farmington Avenue; Hartford, CT 06156. An alternative address is given as P.O. Box 1450, Lexington Kentucky 40512-4560.

4. The agents and employees of Hartford and Aetna specifically represent that the "Policy is not subject to ERISA guidelines."

5. The Group Policy Holder is Corpus Christi Independent School District.

6. The Plaintiff asserts that this court has jurisdiction under diversity jurisdiction under 28 U.S.C. § 1332(a) as the Plaintiff is a resident of Nueces County Texas; the Defendant The Hartford is a corporation with corporate headquarters in Hartford Connecticut; and, the Defendant the Hartford and the long term disability plan exceeds the sum of $75,000.00.

7 The Plaintiff is a beneficiary of a long term disability insurance plan/contract/policy with "Aetna Life Insurance Company" A.K.A. and D.B.A. as AETNA. The "Benefit Plan" is attached as **Exhibit A.**

8. The Benefit plan was in full force and effect when her long term disability was denied by The Hartford's agent and "Appeals Specialist" Tammy Kaufman on November 17, 2021. All conditions precedent have occurred and the final denial letter attached as **Exhibit B.** does not state that all conditions precedent were not met.

9. The Defendant Aetna and Hartford refuses to pay the long term disability policy and breached their contract to pay long term disability for one, or more of the following reasons: Although admitting that the plaintiff cannot perform her former job as school teacher the claimant states the plaintiff could perform the occupation as Teachers Aid II which is also light work; Their own expert hired after the final appeal by the plaintiff states she can only work 35 hours a week. 35 hours a week is not a "reasonable" occupation; The Defendants own experts disagreed as to the Plaintiffs ability to work 35

hours versus 40 hours; The Defendants did not use a vocational expert to substantiate that the plaintiff could work; did not provide the medical reports to the claimant; The Defendants did not consider the plaintiff was granted Social Security Disability which found that she could not perform any job which exists in significant numbers under the same basic terms of the Benefit Plan;  While admitting that the claimant could not perform her past work as a school teacher  the Defendants did not choose her to participate in an "approved rehabilitation Plan"; thereby admitting that the Plainitff cannot be rehabilitated for another occupation; The  Plaintiff has as a variety of "illnesses"  as defined in the policy, som of which were not considered;  The employee analysis review does not contain an analysis or statement or expert report that the occupational jobs listed are available on a 35 hour basis, and if available what would be the reductions of jobs or the pay for such jobs; The jobs listed which the claimant could perform in the employee analysis utilized the Dictionary of Occupational Titles, however The Dictionary of Occupational Titles jobs which were utilized without a vocational experts opinion to support them were  updated from 33 years to 45 years ago, and there was no vocational expert opinion that such jobs still exist, or that the job description is accurate, or that such jobs were available for a person only capable of working 35 hours a week; The Defendant's denial was based upon Doctors who were retained after the Plaintiff's final appeal; therefore creating a new record and case.

10. The Benefit Plan states:  Long term disability (LTD) coverage will pay a monthly benefit if you are disabled and unable to work because of - An illness; - An injury; or -A disabling pregnancy-related condition. Exhibit A, P. 5.  The Benefit Plan, however,

refused to pay long term disability benefits despite the fact that the Plaintiff was disabled from working.

11.   The relevant portions of the Benefit Plan for long term disability state "After the first 24 months of your disability that monthly benefits are payable, you meet the plan's test of disability or any day you are unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition." Exhibit A, p. 6; "Reasonable Occupation" is defined as "(A)ny gainful activity: - For which you are, or may reasonably become, fitted by education, training or experience; and - Which results in, or can be expected to result in, an income of more that 60% of your adjusted pre disability earnings."

11.1 Approved Rehabilitation Program:   A written program approved by Aetna, that provides for services and supplies which are intended to enable you to return to work." Exhibit A, p. 21.

11.2 Aetna has the right to evaluate you for participation in an approved rehabilitation program. Exhibit A, 9; Plan 9

11.3 An illness is "A pathological condition of the body that presents a group of clinical signs and symptoms and laboratory findings peculiar to the findings of the condition apart as an abnormal entity differing from other normal or pathological body states."


12.   Irma Perez   appealed her denial  for long term disability benefits on November 8, 2021 to Tammy Kaufman, a Hartford Appeals Specialist.   See attached **Exhibit C.**  The Plaintiff's appeal letter states, in pertinent part: 1)   The   "peer   neurologist"   has   no

qualifications to make a determination of Ms. Perez's physical residual functional capacity; or her ability to work eight (8) hours a day, five (5) days per week; 2) The vocational assessment was apparently not performed by a vocational expert; 3) The transferrable skills Ms. Perez allegedly has are not enumerated in the vocational assessment; 4) The denial does not take into account the statements of Irma Perez, nor dispute her statements regarding her symptoms, and her physical residual functional capacity to perform work;  5)  Ms. Perez has loss of peripheral vision with her noted symptoms and the symptoms of homonymous hemianopsia; which would make it impossible to perform the jobs of surveillance system monitor and sorter. 6) The thenar and hypothenar atrophy of the left hand was not considered and the "sorter" requires bilateral dexterity; 7) There is no general occupation of "sorter" in the dictionary of occupational titles; 8)  The type of sorter is not identified; 9)  A clerical sorter would require bilateral dexterity; and the ability to see which the claimant does not possess. See DOT 209.687-022; 10)  You failed to consider and/or adequately consider that the claimant was disabled from working; such as the evaluation of Dr. Bill Dennis, M.D on 11/5/2020. 11) The three occupations you listed of "call out operator", "surveillance system monitor", and "sorter" are not "reasonable occupations" based upon the "educator hybrid Long Term Disability plan" that Ms. Perez has in her possession. Attached to the Appeal Letter as Exhibit B is a "Notice of Award" from  the Social Security Administration dated May 13, 2021 entitling her to disability benefits in November 2021. See **Exhibit C**.

13.  Irma Perez was denied Long Term Disability Benefits on November 17, 2021 by the attached letter from The Hartford on November 17, 2021.  **Exhibit D.**  The Hartford letter states in pertinent part that Hartford received the appeal on 11/08/21; Summarizes the Perez appeal letter; States that the Corpus Christi Independent School District Long Term Disability Policy provides for Disability when due to illness, injury claimant is prevented from performing the material duties of her own occupation during the elimination period and for the next 24 months.  After 24 months a claimant must be disabled from working at any "reasonable occupation",  and this definition of disability became applicable as of 12/14/2020; "Reasonable occupation" is any gainful activity for which you are or may reasonably become fitted by education, training or experience and which results in or can be expected to result in  an income of more than 60% of your adjusted predictability income; The claimant reported an inability to work as a teacher on 11/30/18 due to symptoms related to vertigo, and she subsequently suffered a stroke on 1/21/19 with resultant left side visual impairment and left sided weakness; following the Elimination period her claim was approved and benefits commenced on 12/14/18 as it was determined her symptoms warranted restrictions to activity that precluded her from performing the duties of a teacher;  her claim was terminated 12/14/20 as it was determined her symptoms did not warrant restrictions to activity that preclude her from performing any reasonable occupation;    Following a review of the information in the claim file on appeal, all medical documentation in your clients file except the prior independent medical review by Dr. Sherry Withiam-Leitch we asked the reviewers to comment on your clients overall functionality from 12/14/20, including her

conditions, self-reported symptoms, and the ability to sustain work; We received an independent medical opinion dated 11/10/21 from Dr. Asher Neren who was asked to review the file and address vision impairments. Dr. Neren reviewed the available records noting Ms. Perez's medical history significant for a stroke, with left hemianopia and right central diabetic retinopathy. As of 6/17/20, Dr. Neren recorded right visual acuity was 20/80 +1; left visual acuity was 20/30 + 1; best corrected right visual acuity was 20/50 - 1; and best corrected left visual acuity was 20/30 +1. There was a small central serous retinopathy on the right eye as well. as a result Dr. Neren agrees that Ms. Perez requires restrictions from 12.14.20 determining that Ms. Perez could work 35 hours per week requiring breaks from visual tasks such as computer every 2 hours for 15 minutes due to her blurring of vision on the left which may cause straining; he noted her visual function - perception - frequently; Accommodation, that is adjustment of lens of eye to bring an object into sharp focus. This factor is required when doing near point work at varying distances from the eye- Occasionally; Color vision- constantly; Field of vision, that is observing an area that can be seen up and down or to the right and left while eyes are fixed on a given point- never; no driving; no climbing ladders; no working at unprotected heights; no operating machinery.

13.1   The neurologist retained by the Defendants, Dr. Burke, determined that " no restrictions are supported." "No impairment is supported." And no restrictions for headaches because they were not reported in visits with Neurologists. However, this disagrees with the other expert who states that she could only work 35 hours a week.

13.2   An   addendum "Employability Analysis review" was completed and showed a sample   of seven   occupations that are consistent with functional abilities, education, training and experience:

      205.367-014 Charge Account Clerk; Sedentary; Date Last Updated 1977

      237.367-010 Appointment clerk; Sedentary; Date LAst Updated 1977

      237.367-022 Information Clerk; Sedentary, Date Last Updated 1986

      237.367-038 Receptionist; Sedentary, Date Last Updated 1988

      099.327-010 Teacher Aid II (Mischaracterized, Teacher Aide I, Light; Date last Updated 1977)

      237.367-014 Call-Out operator; Sedentary, Date Last Updated 1977

      209.687-022 Sorter;  Sedentary, Date Last Updated 1977

14.   Teachers are characterized as Light work.  Dot No. 091.227-010.  There was a determination that the claimant could not perform her past occupation, that is teacher, because she received benefits for 24 months for her inability to perform her job as a teacher and teachers aid is classified as light work.  Therefore, the claimant could not perform her job which required light work and not be a teacher's aid which also requires light work.

15.   The Dictionary of Occupational titles jobs which was utilized without a vocational experts opinion was last updated approximately 45 years ago. For example the Teacher Aide II, Call operator, charge account clerk and sorter were all updated in 1977; approximately 44 years before the final denial by Aetna on November 17, 2021.  The more recent jobs of information clerk in 1986 was 35 years prior to the decision and the

job of receptionist was last dated in 1988 33 years prior to the final Aetna Decision. The plaintiff asserts that the Dictionary of Occupational Titles is obviously too outdated a source to rely upon regarding skills, physical residual functional capacity, without a vocational rehabilitation expert's testimony.

16.    There is no residual functional assessment of light, sedentary, etc, referenced by the Doctor for the claimant but the denial letter dated November 17, 2021 implies it is sedentary, as all of the occupations are listed as sedentary except the occupation which does not appear to exist of Teachers Aide II.    Therefore,    although there is a paraphrased recitation of what the Doctor states about the residual functional assessment, RFC of the claimant, there is no report; no signed report; nor Curriculum Vitae of the Doctor in the in the file.

17.  Based upon the jobs,  this Doctor apparently limited Ms. Perez to Sedentary work. In addition, "(I)t was determined her symptoms warranted restrictions to activity that preclude her from performing her duties of  a  teacher."  (P. 2 of decision) A teacher is "lightwork" according to the dictionary of occupational titles.  Therefore, the paraphrased statements in the denial letter states that she is limited to less than light work and is limited to sedentary work.

18.  No vocational expert was used to make the determination that the Plaintiff could perform the listed jobs, nor cited in the decision to deny benefits based upon her residual functional capacity to perform sedentary work less than 35 hours a week.   An "Employability Analysis Review" was referenced in the denial letter.  **Ex. E, p. 2**  The decision of Doctor Asher Never limits the Plaintiff  to working <u>up to</u> 35 hours a week.

**Exhibit B, p. 2**.  The Employability Analysis Report does not mention that the claimant is limited to working up to 35 hours per week; nor does it discuss the wages for a person who works those Occupations at 35 hours per week.  Therefore, there is no vocational testimony, nor analysis report that there are occupations  which the claimant could perform for 35 hours a week or less;  and whether they were available in the numbers cited, or that they would pay adequately to classify as reasonable occupations under the Benefit Plan.  **Ex. A,** P. 6. The Employability Analysis report in  fact, is based upon the ability to work 40 hours a week  Ex. E, p. 1.  However, there is only one physician that makes such an aversion that the Plaintiff could work a 40 hour week out of  numerous  treating  and  examining  Doctors,  and  that  Doctor  apparently  never reviewed Doctor Nerena's report limiting the Plaintiff to 35 hours a week. **See Exhibit B, p. 2.**  In addition the Employability Analysis report does not consider the Plaintiffs age as a vocational factor, nor her nonexertional capabilities

19.  The  denial  letter  from  Hartford  dated  November  17,  2021  states  selected occupations are stated to be low-skilled with a Specific  Vocational Preparation level of 3  or  4   and  little,  if  any,  additional  training,  given  prior  work  and  education;  These occupations use worker traits and habits that Ms. Perez possesses; she could readily adjust to these occupation; These occupations exist in reasonable numbers use skills and/or worker 'traits and habits the claimant possesses and are  within her physical abilities; <u>These occupations would also be done with working at least 35 hours  a week</u> and  are  also  offered  on  a  part  time  basis. These occupations would also allow for a 15-minute break every two hours within  the Employability Analysis Review. The work

and educational history used to perform this analysis was obtained from the work and education history form completed by the claimant and job description completed by the policyholder. Ms. Perez reported graduating high school and completing various post-secondary education programs.   The medical information  does not demonstrate any clinical findings to suggest medical impairment of the severity that would preclude occupational functioning.   See **Exhibit B**, pp 2 - 3.

20.   The denial letter from Harford dated November 17, 2021 concludes that "Our determination remains that there is insufficient evidence to support your client's claim of Disability from Any Reasonable Occupation beyond 12/30/20. As such, the termination of your client's claim for benefits was appropriate, and the claim remains closed. " **Ex. B, p. 3.**


21. IIrma Perez appealed her denial for long term disability benefits on November 8, 2021 to Tammy Kaufman, a Hartforrd Appeals Specialist.  See attached **Exhibit C.**  The appeal letter states, in pertinent part:     1) The "peer neurologist" has no qualifications to make a determination of Ms. Perez's physical residual functional capacity; or her ability to work eight (8) hours a day, five (5) days per week; 2)  The vocational assessment was apparently not performed by a vocational expert; 3) The transferrable skills Ms. Perez has are not enumerated in the vocational assessment; 4) The denial does not take into account the statements of Irma Perez, nor dispute her statements regarding her symptoms, and her physical residual functional capacity to perform work; 5)  Ms. Perez has loss of peripheral vision with her noted symptoms and the symptoms

of homonymous hemianopsia; which would make it impossible to perform the jobs of surveillance system monitor and sorter. 6) The thenar and hypothenar atrophy of the left hand was not considered and the "sorter" requires bilateral dexterity;  7)  There  is  no general occupation of "sorter" in the dictionary of occupational titles; 8)  The type of sorter is not identified; 9)  A clerical sorter would require bilateral dexterity; and the ability to see which the claimant does not possess. See DOT 209.687-022; 10)  You failed to consider and/or adequately consider that the claimant was disabled from working; such as the evaluation of Dr. Bill Dennis, M.D on 11/5/2020. 11) The three occupations you listed of "call out operator", "surveillance system monitor", and "sorter" are not "reasonable occupations" based upon the "educator hybrid Long Term Disability plan" that Ms. Perez has in her possession.  Attached to the Letter as Exhibit B is a "Notice of Award" the Social Security Administration entitling her to benefits on May 13, 2021.

22. The appeal letter of the Plaintiff was dated November 8, 2021.  Within nine days, two Doctors were hired by the Defendants, reviewed the medical records, stated an opinion, and a permanent denial letter was drafted and completed on November 17, 2021.  The Plaintiff asserts that it is impossible to review the Plaintiff's appeal letter; retain two appropriate Doctors; have the Doctors review voluminous medical records; and,  assess an opinion of the physical limitations of the Plaintiff by November 17, 2021. The Defendants November 17, 2021 decision was a pretextual decision, and was not an

appeal decision in good faith.   The Plaintiff was denied her right to a decision on her appeal.

23. The Defendants  agree that the Plaintiff could not return to her past job as a teacher, a "light" position according to the Dictionary of Occupational Titles.  D.O.T. 092.227-010 Her past job as a teacher has the same Residual Functional Capacity  of light as the teachers assistant jobs according to the Dictionary of Occupational Titles. 099.327-010. Therefore,  the Defendants made a decision that the Plaintiff could not return to the other occupations within the same physical demands,  including teachers assistant, and this job of teachers aid would also be impossible for her to perform.

24.  Aetna did not evaluate the plaintiff for an approved rehabilitation program, nor make a judgment that she could participate.   Aetna made no such determination while agreeing she was disabled from her teaching occupation for 24 months.  Aetna also requires applicants for disability to apply for disability, and states they are entitled to a set off for social security disability benefits; thereby acquiescing that in numerous respects are linked into social security disability law. Aetna acquiesced that she was not suitable for rehabilitation.

25.  The Labor Glossary for the Dictionary of Occupational Titles, which the Defendants referenced Defines: "Full-time workers (Current Population Survey and American Time Use Survey)  Persons who work 35 hours or more per week". Therefore, the defendants did not meet their burden to find that the claimant could work at a "reasonable occupation" as stated

in the Aetna Benefit Plan, and at best established that she could only work part time. **Exhibit A**, p. 6.

26.  The Defendant utilized an "Employability Analysis" report, generated on November 17, 2020.  The Employability Analysis Report is of no evidentiary value given the fact that it is not expert testimony; there is no veracity give to the analysis; there is no indication that such an analysis is reliable or can be relied upon to make a disability determination. The persons who signed off on the report isd a "Casey Lubinsky, MS, CRC, CVE." is not a Vocational rehabilitation expert within the Daubert standards. **Ex. E.**

27.  The November 10th, 2021 opinions of Dr.  Asher Neren and Dr. David Burke are of no moment as Ms. Perez asserts that neither physician could adequately review her medical records within one to two days of receiving such medical records and render a medically supported opinion.

28.  These opinions of Dr. Neren and Dr. Burke were submitted after Ms. Perez submitted her final appeal.  Ms. Perez,  was therefore denied her ability to file a final  appeal based upon the record,  as the Defendant waited  until after her final appeal to hire experts to justify their previous denials.

29.  The need to retain Doctors after Ms. Perez's final notice of appeal, and her amended appeal after she retained counsel,  indicates that her prior denial by you was not supported by the medical records contained in the claim file and her claim for long term disability should have been granted previously.

30.  The Plaintiff asserts that the Defendant failed to address the issue she raised on appeal and therefore there was no decision on the appeal. The issues which were not considered include:  The "peer neurologist" utilized had no qualifications to make a determination of Ms.

Perez's physical residual functional capacity; or her ability to work eight (8) hours a day, five (5) days per week.   Secondly, the vocational assessment was apparently not performed by a vocational expert. Third, the transferrable skills Ms. Perez allegedly has are not enumerated in the vocational assessment. Fourth, the denial does not take into account the statements of Irma Perez, nor dispute her statements regarding her symptoms, and her physical residual functional capacity to perform work.   Fifth, Ms. Perez has loss of peripheral vision with her noted symptoms and the symptoms of homonymous hemianopsia; which would make it impossible to perform the jobs of surveillance system monitor and sorter. Sixth, The thenar and hypothenar atrophy of the left hand was not considered and the "sorter" requires bilateral dexterity, as does any job which would require use of  the keyboard. There is no general occupation of "sorter" in the dictionary of occupational title 5; and, the type of sorter is not identified. A clerical sorter would require bilateral dexterity; and the ability to see which the claimant does not possess. See DOT 209.687-022  Seventh, you failed to consider and/or adequately consider that the claimant was disabled from working; such as the evaluation of Dr. Bill Dennis, M.D on 11/05/2020. Eighth, the three occupations you listed of "call out operator", "surveillance system monitor", and "sorter" are not "reasonable occupations" based upon the "Educator hybrid Long Term Disability plan" that Ms. Perez has in her possession.   Lastly, Ms. Perez was granted disability for Medicare Coverage by the Social  Security Administration, who made a determination that she was disabled from working  in any job which exists in the national economy, the same criteria that the disability plan  utilizes.

31.   There was no indication in the final appeal decision on November 8, 2021 that Dr. Asher Nevin reviewed Dr. David Burke's records; nor that Doctor Burke reviewed Dr. Asher Nevin's medical records.  Therefore, the neurologist Dr. Burke could not evaluate the medical records of the ophthalmologist Dr. Nevin; nor could  the ophthalmologist review Dr. Burke's records; and,

their opinions are not based upon all of the medical records. Exhibit C.

32. A new employee analysis review was conducted, after Ms. Perez's final appeal and amended appeal.  This  establishes that the Defendant's prior review was inaccurate,  and not supported by the medical records or the claim file.   Therefore, the previous decision is not supported by the medical records as evidenced by the fact that defendants need to obtain additional medical reports after the Plaintiff's appeal.

33.  Gathering new evidence after a decision by Hartford and after the final appeal is permitted, is a violation of procedural due process of law; and would be analogous to allowing in new evidence following a Judge's decision, to justify that prior decision, and issuing a new decision. The plaintiff was denied her right to appeal.

34. There was no vocational testimony to support that the occupations listed on page two of your November 17, 2021 denial are available on a 35-hour week basis; nor that the mean wage is based on a 35-hour week.  In other words,  the monthly mean wages  that you quoted are based upon a 40-hour week and not a 35 hour week;  and there is nothing to substantiate otherwise in a valid claim file which does not include objectionable medical records.

35.  The Defendant Hartford stated in a letter on an unknown date to Dr. Dennis that the Plaintiff is limited to work from home, sedentary work.  Dr.Denis replied on 11/25/20 that the Plaintiff agreed with their assessment but stated they agree with the assessment of Irma's capacity for work and added:   Patient remains permanently disabled due to vision/balance problems per CVA… The Hartford therein made admissions that the plaintiff is disabled from working; in that there is no evidence in the dictionary of occupational titles, in vocational evidence, See Exhibit C, p. 7, that the listed jobs can be performed at home or are available at a home environment.

36.  There is a finding by the Social Security Administration under identical standards to the benefit plan that the plaintiff was disabled beginning November 2019.  The benefit plan requires an applicant to apply for social security disability.  Therefore, they required the plaintiff to apply for Social Security Disability under identical standards to those contained in the Disability plan, and then refused to consider the decision which they required her to file under identical standards.

37.  The plaintiff contends the aforementioned constitute unfair insurance settlement practices under Tex. Ins. Code § 541.060, in one or more of the following ways:

1) Misrepresenting to a claimant a material fact or policy provision relating to the coverage at issue;

2) Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the insurer's liability has become reasonably clear;

3) Failing to provide promptly a reasonable explanation of the factual and legal basis in the policy for an insurer's denial of the claim;

4) Failing to affirm or deny coverage of a claim within a reasonable time;

5) Refusing to pay a claim without conducting a **reasonable** investigation of the claim.

38.  The Defendants violated Texas Insurance Code §541.061 by misrepresenting the disability Policy by making untrue statements of material facts, failing to state material facts necessary to make other statements made not misleading considering the circumstances under which the statements were made; making statements regarding the protection of the plaintiff if he purchased the insurance which would reasonably lead

a prudent person to a false conclusion of material fact; making material misstatements of law; and, failing to disclose the matters required by law to be disclosed  such as the legal standards they would attempt to use to interpret the policy.

39.   The Plaintiff alleges the defendants committed fraud as alleged in the body of this complaint. . The elements of fraud in Texas are:(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.   The plaintiff brings suit against the defendants for fraud.

A)  The Defendants demonstrated a lack of thoroughness and accuracy of the determination of benefits since all of the medical evidence was not used.

B)  The Defendant failed to consider objective medical evidence.

C)  The Defendant's medical  experts were  not qualified as experts in accordance   with Daubert v. Merrell Dow.

D)  The Defendant failed to follow the terms of the benefit plan.

40. The categorization of the Dictionary of Occupational Titles Jobs, is not sufficient to establish one's ability to work without a vocational expert as the job descriptions and their classifications are from the 1970's and 1980's.

41. The Plaintiff's remarks in the medical records constitute testimony, or views, which are not controverted and which are not impeached. There is no controverting testimony or evidence and there is no diagnosis of malingering, etc. There is no indication that the Defendant considered the Plaintiff's views or statements or testimony to his Doctors.

42. The Plaintiff would show he is entitled to declaratory relief pursuant to Section 37 of the Texas Civil Practices and Remedies Code. Specifically, Plaintiff would show that he is entitled to declaratory relief due to Defendant's breach of its contractual obligation under the terms of The Policy. TEX. CIV. PRACT. & REM. CODES §37.001.

43. The Plaintiff asserts that the Defendants failed to notify Plaintiff in writing of the acceptance or rejection of the claim not later than the fifteenth business day after receipt of all items, statements, and forms required by Defendant in violation of Texas Insurance Code section 542.056(a)

44. he Plaintiff asserts the Defendants delayed payment of the Plaintiff's claim in violation of Texas Insurance Code section 542.058(a).

45. The Plaintiff asserts the     Defendants     acted     fraudulently     as     to     each representation made to Plaintiff concerning material facts for the reason it would not have acted and which Defendant knew were false or made recklessly without any

knowledge of their truth. The representations were made with the intention that they be acted upon by Plaintiff, who relied on those representations, thereby causing injury and damage to Plaintiff.

46.  Defendants failed to timely request from Plaintiff any additional items, statements or forms that Defendant reasonably believed to be required from Plaintiff, in violation of Texas Insurance Code section 542.055(a)(2)-(3).

47.  The Defendants carelessly relied on its own flawed review of the records instead of in person medical examinations to decide to discontinue paying benefits.

48.  The Defendants breached its duty of good faith and fair dealing toward Plaintiff and Defendants are liable to Plaintiff for compensatory damages and, for its egregious tortious conduct, punitive damages, and attorneys fees, costs and disbursements incurred in connection with this action.

49.  By reason of the Defendants wrongful acts in breach of the covenant of good faith and fair dealing, Plaintiff suffered financial hardship, substantial emotional distress, mental anguish, and pain and suffering which exacerbated his depression and anxiety.

50.  The actions of Defendants amount to egregious tortious conduct directed at Plaintiff, a consumer of insurance.

51. The Defendants actions directed at Plaintiff are part of a similar conduct directed at the public generally.

52. The Defendants actions were and are materially misleading and have caused injury to Plaintiff.

53. The Defendants knowingly committed the acts and practices, in violation of Texas Insurance Code section 541.002 (1) (formerly Art. 21.21 §2(c)).

54. The Defendants sold the insurance policy to Plaintiff and by collecting substantial premiums therefore Defendant assumed a duty of good faith and fair dealing toward Plaintiff.

55. The Defendants failed to pay benefits to Plaintiff when Defendants knew or reasonably should have known that Plaintiff was entitled to such benefits

56. The Defendants interpreted  ambiguous Plan provisions against the Plaintiff and in favor of its own financial interests: this included the term "reasonable" occupation.  The Defendant Aetna purposefully wrote and tendered a vague Benefit Plan.

57. The Benefit Plan contains an implied promise that it would deal reasonably and fairly and in good faith with Plaintiff and would do nothing to injure, frustrate, or interfere with Plaintiff's rights to receive benefits under the Plan.

58. The Defendants violated the  Business and Commerce Code § 17.46(b)(5) by representing that services had characteristics, uses and benefits that they did not have;

59.    The Defendants violated Business and Commerce Code § 17.46(b)(12) by representing that an agreement conferred or involved rights, remedies or obligations which it did not have or involve.

60.   The Defendants violated Business and Commerce Code § 17.46(b)(24) by failing to disclose information concerning services which was known at the time of the transaction where the failure to disclose such information was intended to include Plaintiff into a transaction into which Plaintiff would not have entered had the information been known.

61.The Defendants failed to afford proper weight to the evidence in the medical record showing that Plaintiff is totally disabled; The Defendant's interpretation of the definition of disability contained in the Policy is contrary to the plain language of the Policy, as it is unreasonable, arbitrary and capricious. A "reasonable" occupation is not up to 35 hour

62.   The Defendants failed to furnish Plaintiff a Full and Fair Review of her claim. The Defendants took 9 days to hire two experts to review the records and prepare reports and issue a decision.

63. The Defendant failed to specify information necessary to perfect Plaintiff's appeal.

64. The defendant constructed a pretense to deny the claim, after the final appeal of the Plaintiff. That is, the Plaintiff was denied her right to appeal.

65. The Plaintiff was told by agents from Hartford and  letter dated 12/02/2020:   "(I)f you disagree with our decision, we're happy to review any additional information you care to submit, such as medical information from your physician or healthcare

professional who have treated you for your condition(s). "  Hartford denied the plaintiffs

appeal on February 19, 2021 on the basis that the physical limitations of Dr. Dennis are

not supported by "objective evidence".  Dr. Morgan Campbell's limitations of memory

and cognitive difficulty, poor balance, vision loss, and no driving are not disputed, but

were not considered in the employee analysis report. Ex. E. Therefore there are no

reports which support the plaintiff can perform a reasonable occupation.

66.   The Plaintiff asserts that the Defendant Hartford, breached the contract with the

Plaintiff for the reasons asserted herein including failing to pay long term disability

without valid legal, factual and contractual reason.

67.  The Plainitiff demands a jury trial.


## <u>CLAIM FOR RELIEF</u>


  The Plaintiff prays for one, or more, of the following:

1)  Long term disability benefits in arrears from on or around 12/30/2020

2)   Actual Damages for long term disability payments from on, or around 12/13/20

including consequential damages; mental anguish; and other damages;

3)     Attorneys fees,   treble damages for knowing violations of the Texas Insurance

Code and Texas Deceptive Trade Practices Act;

4)  Prejudgment interest;

5)  Statutory Interest at 18% per year under the Texas Insurance Code § 542.060(a)

6) Costs and reasonable and necessary attorney's fees as are equitable and just under §37.009 of the Texas Civil Practices and Remedies Code, §38.001 of the Texas Civil Practices and Remedies Code, and Section 542 of the Texas Insurance Code.

7) Plaintiff is also entitled to the recovery of attorneys' fees pursuant to Texas Civil Practices and Remedies Code section 38.001, Texas Insurance Code section 542.060(a)(b), Texas Business & Commerce Code section 17.50, and Texas Civil Practices and Remedies Code section 37.009.

8)  Costs of Court;

9)  Punitive and exemplary damages;

10)  Damages for Economic Hardship in a sum to be determine at the time of trial;

11) General damages for mental and emotional distress and other incidental damages in a sum to be determine at the time of trial;

12)  Damages for past, present, and future medical bills as a result of emotional and/or physical problems incurred;

13)  For a declaration the plaintiff is entitled to restitution of all amounts paid to Aetna including interest, other expenses, commission fees, and interest thereon,as provided by law;

14)  Damages to her Credit Rating;

15)  For prejudgment interest on all damages;

16)  Attorneys fees;

17)  All relief the court deems proper and just;

Respectfully submitted,

By: /s/ Mark A. Di Carlo
Mark A. Di Carlo
Attorney at Law
La Solana Building
722 Elizabeth Street
Corpus Christi, Texas 78404
markdicarlo722@gmail.com
(361) 888-6968
FAX (361) 887-6410
SBN: 05812510

ATTORNEY FOR PLAINTIFF

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that a true and correct copy of the above-entitled and numbered

complaint has been electronically filed on the <u>17th</u> day of November 2023  to the

following:

United States District Clerk
U.S. Courthouse

Respectfully submitted,

By: /s/ Mark A. Di Carlo
Mark A. Di Carlo
Attorney at Law
La Solana Building
722 Elizabeth St.
Corpus Christi, TX 78404
(361) 888-6968
markdicarlo722@gmail.com
FAX (361) 887-6410
SBN:  05812510
FBN:  6839

ATTORNEY FOR PLAINTIFF